UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CANDICE KING, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>ERICKSON DEMEL & ASSOCIATES, PLLC,<br><br>       Defendant. | Case No. 1:23-cv-00398-ADA<br><br>Judge Alan D. Albright |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# I. INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Settlement Agreement and Release (Doc. 25; Ex. 1) (the "Settlement" or "SA") and this Court's Preliminary Approval Order (Doc. 27) (the "Preliminary Approval Order"), Plaintiff Candice King ("Plaintiff" or "Ms. King") respectfully moves for final approval of the proposed Settlement with Erickson Demel & Associates PLLC ("Erickson Demel" or "Defendant") as "fair, adequate, and reasonable" and affirmation of the Settlement Class certification defined in the Settlement Agreement. The Settlement, reached after investigation, litigation, and hard-fought negotiations, resolves all of Plaintiff's and Settlement Class Members' claims against Defendant in this action. Plaintiff and Class Counsel firmly believe that the settlement is in the Settlement Class's best interests and that the Settlement satisfies the standards for final approval discussed herein.

With this settlement, Plaintiff achieved what she set out to accomplish with this case. Following the January 2023 Data Incident, Plaintiff sought to compensate putative members of the class for potential losses related to the Data Incident. If approved, the Settlement will deliver just that, securing such benefits for the class.

First, it guarantees Settlement Class members to the opportunity to claim losses from the incident, including "Out of Pocket" losses of up to $5,000 for extraordinary losses, $350 for ordinary losses, and up to $100 in lost time subject to the $350 ordinary losses cap. Second, Class Members can submit a claim for credit monitoring for one year with one credit bureaus at no cost and $1 million in fraud insurance, reducing their risk for identity theft and fraud. Third, Erickson Demel has affirmed it improved its cybersecurity following the incident. Finally, Erickson Demel will pay the costs to administer the settlement, the class's attorney fees and costs, not to exceed $130,000, and Plaintiff's service award, not to exceed $2,500. The cost of the settlement

administration and notice, out of out-of-pocket losses, credit monitoring, attorney's fees, and services awards are capped at $400,000.

Through the parties' notice program, 6,435 notices were sent via U.S. mail, notifying 89.6% of Class Members. Declaration of Christopher Leung ("Leung Dec.") ¶¶ 5-6. The notice provided Class Members with a chance to claim benefits either online or by mail. As of this date, no Class Members have objected to the Settlement or requested exclusion. *Id*. ¶¶ 14-15.

Accordingly, the settlement is "fair, adequate, and reasonable," and the Court should approve it. Indeed, the Court should presume the settlement satisfies Rule 23(e) and the Fifth Circuit's standards for approval because the parties negotiated and administered the settlement at "arm's length." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) (There is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources"). This is not to mention that the risks in litigating this matter through discovery and trial merit settlement at this stage, as Plaintiff had the facts needed to evaluate the case's strengths and weaknesses and the relief that would best benefit the class. In other words, the results achieved under the circumstances here exceed what Rule 23(e) and the Fifth Circuit expect from Plaintiff and her counsel in approving this settlement.

## II. BACKGROUND

### A. The Litigation

Erickson Demel is a company located in Austin Texas, selling a variety of professional services in the areas of attestation, assurance, tax, and accounting. (Doc. 1) ("Compl.") ¶¶10, 13. Plaintiff alleged that Erickson Demel collected Personal Identifiable Information ("PII") from its current and former clients to run its business. *Id.* ¶ 16. This information included its clients' (and/or employees of its current and former clients') "names, home addresses, Social Security Numbers,

driver's license numbers, financial account numbers, credit card numbers, and debit card numbers." *Id.* ¶ 20. Plaintiff alleged that by collecting its clients and clients employees' PII, Erickson Demel promised to protect this data, stating that it will "comply with required reporting requirements and other internal and external information needs" *Id.* ¶ 15. However, Plaintiff alleged that Erickson Demel never implemented the safeguards and systems needed to fulfill its promise, and this led to the data breach. *Id.* ¶ 16.

Plaintiff alleged that on January 9, 2023, Erickson Demel was hacked (the "Data Breach"). *Id.* ¶ 18. However, Erickson Demel would not discover this Breach until five days later, on January 14, 2023, when it realized discovered that criminals had bypassed its security systems and may have compromised current and former clients' PII. *Id.* ¶ 19. Following this incident, Erickson Demel mailed notice to affected persons on March 9, 2023. *Id.* ¶ 22. Plaintiff is a victim of this Data Incident. *Id.* ¶¶ 6, 30.

Having received notice of this Breach, on April 7, 2023, Plaintiff filed suit against Erickson Demel. Plaintiff alleged that, as a result of the Data Incident, Erickson Demel was liable for negligence and negligence *per se*, breach of implied contract, breach of fiduciary duty, intrusion upon seclusion/invasion of privacy, and unjust enrichment. *Id.* ¶¶ 77-152. Recognizing the benefits of early resolution of Plaintiff's and the Class's claims, the parties agreed to explore settlement. *See* Doc. 26 ("Borrelli MPA Dec.") ¶ 6.

## B. Negotiation and Settlement

Shortly after Plaintiff filed her suit, Parties engaged in early settlement discussions and informal discovery and were able to agree on the material terms of a class wide settlement. *Id.* ¶ 6. While the arm's length negotiations were always collegial, cordial, and professional, there is no

3

doubt that they were adversarial in nature, with both parties forcefully advocating the position of their respective clients. *Id.*

From the start, the parties agreed they would not negotiate the proposed class's attorney fees or plaintiff's service award until they agreed on the settlement agreement's core terms, thus avoiding conflict between plaintiff and the class. *Id.* ¶ 7. These negotiations between the Parties resulted in a Settlement. *Id.*

In the weeks that followed their agreement on the material terms of the settlement, the parties diligently negotiated and circulated drafts of the Settlement Agreement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Claims Administrator. *Id.* ¶ 8.

### C. The Settlement

As stated *supra*, the Settlement affords the class four significant benefits. The benefits of the Settlement are available to all Settlement Class Members, with Defendant agreeing to pay up to $400,000 for Settlement Class Benefits, Settlement Administration and Notice costs, credit monitoring, and attorney's fees and costs Plaintiff's service award.

The first benefit category is monetary relief for losses. For "Out of Pocket" losses, Class Members could claim up to $5,000 in extraordinary losses that were "more likely than not caused by" the Data Incident." SA ¶ 44(c). Class Members could also claim up to $350 in ordinary losses, including unreimbursed bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel. *Id.* ¶ 44(a)(i). Finally, Settlement Class Members who spent at least one hour dealing with the Data Incident could also claim up to four hours of lost time at $25 per hour (or up to $100 total) by submitting a claim attesting to the number of hours spent responding

to issues raised by the Data Incident and checking a box describing how the claimed lost time was spent. *Id*. ¶ 44(b). This claim for lost time is subject to the $350 cap of ordinary losses. *Id*.

Second, Settlement Class members could receive credit monitoring at no cost if they submitted a valid claim for credit monitoring services through the settlement. *Id.* ¶ 43. The monitoring will last for one year under one bureau, adding "identity theft protection services" as a service. *Id.* Those services will come with fraud insurance, covering up to $1 million in losses for members who enroll. *Id.*

Third, Erickson Demel has confirmed it has implemented information security enhancements, affirming that "Erickson Demel agrees to adopt and implement additional data security measures." *Id.* ¶ 44.

Fourth, Erickson Demel will pay the cost to administer the settlement, including the Claims Administrator's costs to notify the class and process claims, as well as the costs of any dispute resolution. *Id.* ¶ 55.

Last, the Agreement outlined how the parties were to notify the class, specifying how to do so and how to accept claims, opt-outs, and objections. *Id.* ¶¶ 56, 20. Class members could object within 60 days by notifying the claims administrator, Simpluris ("Simpluris" or "Claims Administrator"[1]) and the parties' counsel in writing about the bases for their objection, including all the information needed to process it. *Id.* ¶ 20. To opt-out, class members could notify the Claims Administrator about their choice by "clearly manifesting" their intent to opt out in writing. *Id.* ¶ 56. Otherwise, class members could submit claims on the claim form provided.

In exchange for any benefits, class members released Erickson Demel from liability related to the Data Incident. *Id*. ¶¶ 66-68. However, the parties tailored the release to *only* those claims

---

[1] *See* SA ¶3.1.

arising from the Data Incident, preserving any claims that Class Members may otherwise have against Erickson Demel. *Id*.

### D.  Preliminary Approval, Notice, and Claims Activity

On April 23, 2024, Plaintiff moved the Court to "preliminarily" approve the Agreement and implement its terms. Docs. 25-26. After considering the merits underlying the proposal, the Court granted Plaintiff's motion, ordering the parties to hire an administrator and notify the class. Doc. 27. Since then, the parties have carried out the Agreement's terms, serving settlement notices on class members and collecting their claims. Leung Dec. ¶¶ 5-13.

The Claims Administrator was charged with notifying the class and processing class member claims. Simpluris is an industry leader in class action administration, having implemented more than a thousand successful class action notice and settlement administration matters. *Id*. ¶ 2. Indeed, Simpluris has been involved with some of the most complex and significant notice programs in recent history, including administering over 9,000 cases nationwide, with class sizes ranging from a few hundred to over one million class members. *Id*. As the Claims Administrator, Simpluris was required to update contacts for class members, create a settlement website, establish a toll-free number, notify the class by First Class Mail, and process claims, opt-out requests, and objections. *Id*. ¶¶ 8-17. As of April 23, 2025, Simpluris has accomplished each task.

On September 10, 2024, Simpluris received one file from Erickson Demel containing a total of 7,268 records of class member data. *Id*. ¶ 5. After performing standard data hygiene and deduplication analysis, the final class list was confirmed to contain 7,181 unique Settlement Class Members. *Id*. Of the 7,181 Settlement Class Members, Simpluris identified 3,939 Settlement Class Members with valid mailing addresses. *Id*.

During that time, Simpluris also set up the settlement website, www.EricksonDemelSettlement.com that listed all settlement documents, claim forms, case details, and gave class members the chance to submit their claims online. *Id*. ¶ 11. Further, Simpluris established a toll-free telephone number to allow Class Members to call for additional information, listen to answers to FAQs. *Id*. ¶ 12.

On October 4, 2024, Simpluris disseminated Postcard Notices via U.S. First Class Mail to the 3,939 Class Members with valid mailing addresses. *Id*. ¶ 6. Simpluris received 375 postcard notices as "returned as undeliverable" by USPS. *Id*. ¶ 6. Notices "returned as undeliverable" were resent to any new address available through USPS information, (for example, to the address provided by the USPS on returned mail pieces for which the automatic forwarding order had expired but was still within the time period in which the USPS returned the piece with the address indicated). *Id*. Upon successfully locating better addresses, Simpluris promptly remailed the notices. *Id*. As of April 23, 2025, Simpluris had remailed 317 postcard notices. *Id*.

On September 30, 2024, the parties approved a reverse skip-trace lookup to be performed on the other 3,242 Class Member records with invalid addresses. *Id*. ¶ 7. This reverse skip-trace lookup on the 3,242 Class Members was performed on January 15, 2025, having been inadvertently overlooked by Simplus's before that. *Id*. Of the 3,242 Class Members, the skip-trace resulted in 2,797 valid addresses. Simpluris disseminated Postcard Notices via U.S. First Class Mail to the 2,797 Class Members with valid mailing addresses from the results of the skip-trace lookup on January 17, 2025. *Id*. ¶ 8.

As of April 23, 2025, 262 of the 2,797 Postcard Notices have been returned as undeliverable. *Id*. ¶ 9. 19 of these Notices that were returned as undeliverable were resent to the new address available through USPS and skip tracing. *Id*.

Through these extensive efforts, Simpluris was able to directly notify 6,435 of the 7,181 class members, or around 89.6% of the class. *Id.* ¶ 10. Simpluris therefore provided "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and succeeded in doing so. *Amchem*, 521 U.S. at 617.

The Claim Deadline was April 27, 2025. *Id.* ¶ 13. As of April 29, 2025, Simpluris has received 118 Claim Form submissions, which they continue to review for validity. *Id.*

### III.    LEGAL STANDARD

Courts approve settlements under Rule 23(e). Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). At root, the analysis centers on whether the settlement is "fair, reasonable, and adequate" *Id*. And that concept considers four factors under Rule 23(e): (i) "adequacy of representation;" (ii) whether there were "arm's length" negotiations; (iii) "adequacy of relief;" and (iv) equity between class members. *Id*. Within the third factor, "adequacy of relief," the Court considers the case's risks, how the parties propose distributing relief, attorney's fees terms, and any other agreements impacting settlement. *Id*.

These factors overlap with Fifth Circuit precedent governing the approval process. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (identifying six factors for approval). The factors consider: (i) whether there was fraud or collusion when negotiating the agreement; (ii) the case's complexity; (iii) the litigation stage and discovery taken; (iv) the risk in litigating the case; (v) the "range of possible recovery;" and (vi) whether the class, class counsel, and plaintiff recommend the settlement.

Because these factors overlap with one another, "courts in this circuit often combine them in analyzing class settlements." *ODonnell v. Harris Cnty., Texas*, No. CV H-16-1414, 22019 U.S. Dist. LEXIS 151159, at *26 (S.D. Tex. Sept. 5, 2019). In so doing, a district court must "keep in mind the strong presumption in favor of finding a settlement fair." *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 U.S. Dist. LEXIS 22547, at *16 (N.D. Tex. Dec. 11, 2003). That analysis does not mandate that plaintiffs maximize their recovery: "[a] proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. Indeed, requiring a plaintiff to maximize their recovery would defeat the point in settling, as "compromise is the essence of a settlement…the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978).

In other words, barring any fraud or collusion, a district court should hesitate to "substitute [their] own judgment for that of counsel." *Klein*, 705 F. Supp. 2d at 649. The settlement here satisfies that analysis.

## IV.   ARGUMENT

### A. The Settlement is fair, reasonable, and adequate

The settlement is fair, reasonable, and adequate under Rule 23(e) and the *Reed* factors because it delivers relief to approximately 7,181 current and former clients of Erickson Demel who submitted valid Claims following the Data Incident. This relief provides relief *now*, rather than risk not obtaining any relief in litigation. Indeed, the Settlement secures all the benefits Plaintiff sought in her suit. Depriving Class Members of the benefits the Settlement provides on the

9

speculative chance they may do better years from now would not serve the class's interests. For these reasons, the settlement satisfies all factors for approval.[2]

      i.      <u>The Court should presume the settlement is "fair, adequate, and reasonable"</u>

As set forth above, there is a "strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources." *Klein*, 705 F. Supp. 2d 632, 650. Further, in the "absence of any evidence to the contrary," the Court may also presume that "no fraud or collusion occurred between opposing counsel[.]" *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 U.S. Dist. LEXIS 227456, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018).

Plaintiff and her counsel qualify for this enhanced, "strong presumption." While the parties' arm's length negotiations were always collegial, cordial, and professional, there was no doubt that they were adversarial in nature, with both parties forcefully advocating the position of their respective clients. Borrelli MPA Dec. ¶ 6. Those positions were informed by pre-mediation discovery exchanged under FRE 408, allowing Plaintiff's counsel to understand the landscape affecting settlement. *See In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1064 (approving settlement because "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses"). And they avoided any collusion when they insisted that the parties agree on the class's benefits before negotiating Plaintiffs' attorney fees or service award. Borrelli MPA Dec. ¶ 7.

As a result, the parties fulfilled what Rule 23(e) and caselaw expect under this factor, entitling them to start this analysis with the "presumption of fairness."

      ii.     <u>Plaintiff and her counsel represented the class "adequately"</u>

---

[2] Because the *Reed* factors overlap with the factors under Rule 23, Plaintiff consolidates the analysis below.

10

Plaintiff and her attorneys satisfy Rule 23(e)(2)(A) because they litigated the class's claims without conflict with the class and have established that they put the class's interests before their own. *See generally* Borrelli MPA Dec.; *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1055 (adequacy satisfied when class counsel had "extensive experience representing consumers, and other plaintiff classes, in class-action litigation," including "experience representing consumer classes in similar data-breach cases"). There is also no evidence that Plaintiff's interest conflicted with the class, as they were "typical" class members seeking the same relief as the class and they are guaranteed nothing more than the class will receive.

To reach this result, class counsel investigated the class's claims when litigating them in Court and when exploring settlement with Erickson Demel and insisted on Federal Rule of Evidence 408 communication and informal discovery to ensure Class Counsel had sufficient facts and information to make an informed decision about resolution. Borrelli MPA Dec. ¶ 6. Thus, counsel had a "full understanding of the legal and factual issues surrounding this case" when agreeing to explore settlement. *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). And that work preceded counsel's efforts in "mediating the dispute, review[ing] confidential confirmatory discovery, draft[ing] the settlement agreement and exhibits, prepar[ing] and submit[ing] the Motion for Preliminary approval (which was ultimately granted), and implement[ing] the parties' settlement[.]" ECF No. 40 ("Borrelli Fee Dec."), ¶6. For these reasons, Plaintiff has satisfied the "adequacy" factors.

    iii.    <u>This case's risks, complexity, and expense justify settlement at this stage</u>

There is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). And this case is not only "complex"—"it

lies within an especially risky field of litigation: data breach." *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 U.S. Dist. LEXIS 117355, at *24 (S.D. Fla. July 8, 2023). This is why courts favor settling breach cases. *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein*, 705 F. Supp. 2d at 651 (citing *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). Although Plaintiff believed her claims were strong and that she would have overcome the hurdles of a motion to dismiss, class certification, dispositive motion briefing, and trial, given the challenges faced in any complex litigation (which are even more acute in the developing area of data breach), the risks justified settling at the stage Plaintiff did. *See Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("Settling now avoids the risks and burdens of potentially protracted litigation.").

And although the parties have settled this matter without "formal" discovery, that is no bar to settlement. *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999) (The "[s]ufficiency of information does not depend on the amount of formal discovery which has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed."). Again, the Settlement achieves what Plaintiff desired when she filed her complaint—compensation for the class's claimed losses, and protection against future risk. There is no reason to risk losing the benefits of recovery entirely by refusing to settle on those terms.

    iv.    <u>Class counsel recommends the settlement</u>

The Court should consider class's counsel opinion on settlement because "[t]he Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight" when "evaluating a proposed settlement." *Klein*, 705 F. Supp. at 649 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978)); *DeHoyos v. Allstate Corp.*, 240 F.R.D. at 292 ("The endorsement of class counsel is entitled to deference."). As class counsel explains by their declaration, they understand how data breach cases work and the factors to consider when litigating them. Borrell MPA Decl., ¶¶ 9-14. They also understand how the relief secured here exceeds that achieved in other cases. *Id*. The Court should accept this judgment when weighing the approval. *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'"). As a result, Plaintiff satisfies this factor.

    v.    <u>The method for delivering relief supports approval</u>

If the Court approves the settlement, Simpluris will pay verified claims and facilitate enrollment in credit monitoring as claimed by the class. Given that Simpluris has experience in delivering relief like this—including implementing more than a thousand successful class action notice and settlement administration matters, Plaintiff trusts that the class will receive what they qualify for under the settlement. Leung Dec.¶ 2.

    vi.    <u>The settlement treats class members "equitably"</u>

Plaintiff satisfies the factor under Rule 23(e)(2)(D) because all class members are treated "equitably." Simpluris notified all class members using the same methods, reaching 95.5% of those whom Notice was mailed to and affording them the same options. And although their recoveries may vary in amount, that does not render the relief "inequitable," as it compensates them for their

"relative" losses. *Spegele v. USAA Life Ins. Co.*, No. 5:17-cv-967-OLG, 2021 U.S. Dist. LEXIS 204744, at *30 (W.D. Tex. Aug. 26, 2021) (approving a settlement that award differing recoveries based on a formula that considered class member's "relative" losses).

  vii. <u>Class members have not objected or opted out of the settlement</u>

As Simpluris explains by declaration, no class members objected to the settlement or chosen to opt out—speaking to the positive response to it. Leung Dec. ¶¶ 14-15. As a result, the Court should find this factor supports settlement.

**B. The Court should finally certify the settlement class**

Settlement classes are routinely certified in consumer data breach cases. There is nothing unique about this case that would counsel otherwise. This Court already found when it preliminarily approved the Settlement that it likely would certify the class. The class still meets the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve Class Member claims, the Court should finally certify the Settlement Class for settlement purposes. For completeness, Plaintiff addresses the Rule 23(a) and (b) factors below, and also incorporates by reference the analysis in her preliminary approval motion (*see* Docs 25-26 at 14-16).

*Numerosity*. The class satisfies Rule 23(a)(1) because it is "so numerous that joinder of all members is impractical." In the Fifth Circuit, even a class with 100 members "is within the range that generally satisfie[s] the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). With over 7,181 members, this class surpasses the standard for establishing numerosity.

*Commonality*. Ms. King has shown "commonality" for purposes of settlement because her claims involve "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). All class

members share the same questions with their claims, including whether Erickson Demel failed in its duties to protect their PII and thus harmed them. These questions satisfy the "commonality" factor. *See In re Heartland*, 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011)) (the questions linking class members must be "apt to drive the resolution of the litigation" by generating "common" answers, even if class members).

***Typicality***. Ms. King satisfies this factor because her claims are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality exists when the representative's claims "arise from a similar course of conduct and share the same legal theory[.]" *Stott v. Capital Fin. Servs.*, 277 F.R.D. 316, 325 (N.D. Tex. 2011) (internal quotations and citation omitted). Plaintiff satisfies this factor because the Settlement Class's claims all arise from the same event—the data incident—and all rely on the same liability theories.

***Adequacy***. Ms. King and her counsel are more than "adequate." There is no "antagonism or conflict of interest between" the class and Ms. King. See *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Ms. King and the Settlement Class are entitled to the same benefits under the Settlement, and her request for a service award does not impact what the class will receive, even if the Court denies it. Additionally, Settlement Class Counsel is adequate because they are class action attorneys who know how to litigate data security cases and settle them on terms that are "fair, adequate, and reasonable." *See* Docs. 24-25 (Strauss Borrelli PLLC Firm Resume).

***Predominance and Superiority***. Under Rule 23(b), Ms. King establishes that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). First, for the purposes of settlement, the

15

issues affecting the class predominate over all other questions. *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Those issues center on whether Erickson Demel failed to protect the class's PII despite its duties to do so, leading the class to suffer losses stemming from the incident. And resolving this case class wide is "superior" to each class member asserting their own claims.

Thus, certification of the Settlement Class is merited under Rule 23(a) and pertinent Rule 23(b) factors.

### C. The Notice Plan Complied with Rule 23 and Due Process

The Court should approve the notice plan because the parties directed "notice in a reasonable manner" under Rule 23. Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. *Id*. "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*. To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Windsor*, 521 U.S. 591, 617. Notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. Fed. R. Civ. P. 23(c)(2)(B).

The notice program here has satisfied this prong. The parties used First Class Mail to alert class members to the settlement, a recognized notice method. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011

WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed class members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through and attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed class members to easily find any section that they may be looking for. Thus, it was substantively adequate.

SImpluris also set up a website for class members to review all case documents and review the settlement's details, ensuring they could claim benefits with ease. This effort exceeds what Plaintiff must show to carry their burden on the due process prong. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), cert. denied sub nom. *Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.") (internal citations omitted).

## V. CONCLUSION

For the reasons above, the Court should enter an order finally approving the parties' settlement, certifying the class for purposes of judgment on the Settlement, and granting Plaintiff's request for attorneys' fees, costs, and service awards.


Dated: May 6, 2025              Respectfully Submitted,

                                By: */s/ Raina C. Borrelli*
                                    Raina C. Borrelli (*pro hac vice*)
                                    STRAUSS BORRELLI PLLC
                                    One Magnificent Mile

980 N. Michigan Avenue, Suite 1610
Chicago, IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

Joe Kendall
KENDALL LAW GROUP PLLC
3811 Turtle Creek Blvd., Suite 1450
Dallas, TX 75219
Telephone: (214) 744-3000
Facsimile: (214) 744-3015
jkendall@kendalllawgroup.com

*Attorneys for Plaintiff and the Proposed Class*

18

**CERTIFICATE OF SERVICE**

    I, Raina C. Borrelli, hereby certify that on May 6, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 6th day of May, 2025.

                          STRAUSS BORRELLI PLLC

                          By: */s/ Raina C. Borrelli*
                                Raina C. Borrelli
                                raina@straussborrelli.com
                                STRAUSS BORRELLI PLLC
                                One Magnificent Mile
                                980 N Michigan Avenue, Suite 1610
                                Chicago IL, 60611
                                Telephone: (872) 263-1100
                                Facsimile: (872) 263-1109